will hear argument in Concepcion v. New York City Department of Education, 19-1693. Mr. Larson. Yes. Good morning, and may it please the court. In its opinion, the lower court erroneously granted summary judgment based on his refusal to leave the stairwell and hallway and to go into the dean's office. Not only was this holding directly rebutted by the video that captured those moments, but it's also rebutted by the court's misapplication of the elements of disorderly conduct. The court also errs by conclusorily concluding that there was no excessive force used to arrest and detain Raymond based on a single case, JLBE-Suffolk-Bosset, where a student was throwing rocks at a teacher in a standoff that presented a significant safety risk. This was not the case here. There's no question that the day of Raymond's arrest began with a verbal exchange with a teacher who questioned whether he belonged at a Black History presentation in the auditorium that he arrived at a minute late. There's no question that Assistant Principal of School Safety Bourbon asked Raymond to go with him to the dean's office where he was going to give him a timeout and call his mother for his alleged infraction of the Department of Education's disciplinary code, which was the lowest possible infraction and didn't even warrant a superintendent's suspension. It certainly didn't warrant an arrest and assault. Parties agree that at some point along the way towards the dean's office that AP Bourbon decided to radio for assistance and that two uniformed NYPD school safety officers responded and met them just short of the dean's office. They also agree that at some point Raymond stopped and asked to call his mother first and that AP Bourbon rejected this request. Raymond was afraid of what would happen because of what defendants admit was an unfortunate escalation from what was a low-level DOE infraction. They admit this in their opposition brief. The parties agree the school safety officer burial led Raymond into the stairwell and sat him down to speak to him and convince him to go to the dean's office and to call his mother from there. Raymond was afraid. From the moment the school safety officer led Raymond into that stairwell until the point at which Raymond stopped at the threshold of the door to the dean's office, turned towards them and pleaded his case to call his mother once again, was entirely depicted in two school security videos that can be viewed. They're very clear. They show SA Burial powering over 300-pound uniformed police officers. Mr. Larson, let me just ask you a question. I'm focused on the excessive force. In part, it's because I think that there is a possible basis for the initial seizure that rests on a refusal or blocking of government administration in this case. On the excessive force, the video seems to show to me your client, and I think that Judge Donnelly picked up on this, at some point raising his arm in the hallway. And why is that not, and then you can't see what happens as he's pushed into, I guess, off the hallway into the other room to the left of the video, but why is that not, at least as a matter of using force, a reason or a predicate for the force? In other words, why is that not a form of resistance to arrest? Well, I would argue that that was not the basis of the court's decision, and that it specifically did not resolve that issue. It acknowledged that there were drastically different interpretations of the video, and it rested its decision that there was probable cause entirely on Raymond's refusal, purported refusal, to leave the hallway, leave the stairwell, and go into the Dean's office, which he was afraid to do because of the over-response and escalation of a minor disciplinary matter that the defendant admit. Okay, but would you just answer my question about the force? Before we get to excessive force, force, period. We argue that there was no probable cause. The court decided that there was probable cause based on Raymond's refusal, and that because there was probable cause, it was arguable probable cause, and because there was both probable cause and arguable probable cause, the officers would have enjoyed qualified immunity. The court went on to determine that, notwithstanding, there was no excessive force used, because without really describing the conduct that occurred in the video, and without considering what happened inside the courtroom, which was the application by assistant principal Bourbono of an illegal knee-to-neck chokehold that's long been banned by the NYPD, that's been recently criminalized by the city council, and that a civilian, like a school official, would not enjoy consensus of probable cause, qualified immunity. He can't even use corporal punishment. He wasn't allowed to assist in the arrest by the NYPD patrol guy. By the NYPD's own patrol guy, he was not permitted to assist in the arrest. He was already being arrested. Judge Park, do you have any questions? I'm sorry? No questions. Thank you. Judge Raycom? I have questions for the other side, so I'm anxious to go. Okay. I think, Mr. Larson, you've got a few more minutes, so whatever you'd like, or you can also, wait, you have not reserved any time for rebuttal. I would like to reserve time for rebuttal, if I may. I'll tell you what. So, if you'll stop, I'll ask the clerk just to remind me, I'll give you two minutes of rebuttal, and we'll hear from Ms. Carlin. Thank you. May it please the court. Antonella Carlin for the City of New York. Did the district court correctly granted the city summary judgment here? So, this is Judge Raycom. I've watched carefully the videos. I don't see what this unfortunate young man did that was unlawful in any respect whatsoever. And I do see gross overreaction by the various people, not only the officers, but even the principal. So, please explain to my naive view what it is that this young man did that was in any way, shape, or form unlawful. Sure. So, I think the two videos, when you view them together, you're talking about an incident that he was supposed to, the directive was to go to the principal's office. This is something that should have been very routine, a one-minute walk down a hallway. And it wasn't because of Raymond's conduct. Oh, wait a minute. This all starts according to the allegations that we need to evidence, because he's like a minute late for a meeting, right? Well, I think that actually the officers who were directed to take him down, I don't think that that's what they were told. So, that's what Raymond says happened. But the other side said that he called the teacher, you know, an inappropriate word. And so what? Testimony is that they were aware that he was told that he has to go to the dean's office for that. And that's what the officers who were taking him to the dean's office and the assistant principal were aware of. And he was repeatedly asking to call his mother, yes? He asked him to call his mother. And he was told multiple times that as soon as he got to the dean's office, he could call his mother. Why couldn't he call before? Because the dean's office was literally down the hallway from the auditorium. They were asking him to walk down one step. Hey, here you have a frightening young man, and they won't even let him call his mother until he gets to the dean's office, where coincidentally, there's no security cameras. I think it's a matter of school safety that you don't want people just standing in the middle of the hallway making phone calls when you just have to talk to them. Oh, my gosh. I know that there never is phone calls from hallways in schools. That's absolutely unheard of in this day and age. And if anyone does it, they are jeopardizing school safety. Is that your argument? So when they get into the stairwell, he refuses and he stops. One of the officers takes him in the stairwell to try and convince him to go in. And when you watch the video, the officer is extremely patient with Raymond. Raymond lays down on the stairwell and refuses to get up. Now the bell is about to ring. It's 2,400 students in the school. Excuse me. The video shows that various people came down that stairwell without the slightest problem. They went right past him. They didn't even pause. So how can you say he was blocking the stairwell? Well, they did pause. And in fact, some of them had to swarm through. And this is not when the bell rang and you have 2,400 students in the hallway, in the stairwell. This is in between classes. So just imagine when 2,400 students are let loose. It's a completely different story. And again, not unreasonable for them to ask him to get up and just go to the dean's office. And what was it that they arrested him for? Wasn't it disorderly conduct? It was obstruction of governmental administration and I believe resisting arrest. And there might have been a charge of harassment or menacing having to do with things that he allegedly said to the assistant principal after. Was there anything that wasn't simply a violation? I think obstruction of governmental administration is a misdemeanor. And what was the obstruction that he engaged? Well, I think it started in the stairwell when they repeatedly asked him to get up and go to the principal's office and he refused. And at certain points, he became aggressive. And then when you say, wait, I'm sorry, maybe I missed that. Where do you say he became aggressive? Yeah. So it's about, excuse me, I'm not sure what videos you have. I have two videos. Yeah. So the stairwell video, does that go around seven minutes? Yes. Okay. So if you go to around four, maybe 420 in that video, you can see the assistant principal tries to guide him up and he physically pushes twice. And then at one point he leans back and it appears as though the bigger officer has to push down his leg, like Ringman had lifted his leg and he has to push it down. And they told him that the bell's about to ring, he needs to get up and he just refused. So eventually they tried very hard to convince him to do it on his own. But when it became clear that he was not going to do it on his own and that the bell was about to ring and the kids and And again, he still resisted. You can see him towards the end of the video, he goes limp. So they have to push him forward because he's not moving his legs. Again, this should have been a one minute routine walk from the auditorium to the principal's office. Ms. Carlin? Sorry? Yeah. This is just Lohier. So I'm focused on, and you heard my questions to Mr. Larson on the force and the use of force. And as I understand it, there are three factors that we are to consider in determining whether the force use was excessive. The first is the nature and severity of the crime leading to the arrest. And you, in answer to his breakups questions, said maybe the worst one is violation of the obstruction of governmental administration, right? A misdemeanor. And it's because he refuses to get up at one point and maybe arguably in the hallway, but apparently you're not relying on this. He raises his arm at a certain point. The second factor is whether the suspect poses an immediate threat to the safety of the officer or others. And the third is whether the suspect was actively resisting arrest or attempting to evade arrest by flight. And Judge Donnelly, of course, focuses on, I guess, number two, the suspect poses an immediate threat. I don't know. But can you tell me was the crime or crimes that you have listed, are those crimes that are significant, severe? So I think, like you said, the obstruction of governmental administration is a misdemeanor. But I think the point here is that... Well, no, no, no. Can you answer that question? Is that something that we would, in the ordinary course, consider to be a significant crime? I think it's a significant crime. I mean, it's not a felony, but it's significant here because they were just trying to handcuff him. And that came only after they... I know what they were trying to do. It's a claim of excessive force, not force, excessive force. So you told me that those are the three. You agree with me that those are the three factors that I'm talking about. Sorry. How to determine whether the force used, whether it's handcuffing, but it turns out to be a little bit more than that, was excessive. Yeah. Well, and I would also add that you should also look at whether the force that was used was applied in good faith or to restore discipline, or it was used maliciously and sadistically. And I think here, that's the point. Here, it was 10 minutes of them trying to do their job and get Raymond to the principal's office and him just actively resisting them every step of the way. And then making a gesture that they thought was... One of them thought that he was trying to that point. How can that be a reasonable interpretation? He just raised his arm. I'm sorry? He just raised his arm. That's all he did. Well, they reasonably perceived it as him trying to get through them or punch them. And my question to you is, what reasonable basis could they possibly have for making that assumption from the fact that he simply raised his arm? Well, according to the officers, he threatened that there were words exchanged. It wasn't just the gesture. Is it right that he denies that? He denies threatening, making threatening statements to them. But he does admit that he made a gesture. Is this not on summary judgment? With respect to the statements, that seems to be a dispute. So the question is, I think we all see, or I saw the video where he raises his hand. And the question then is, how do you... Is that a threatening gesture? So, okay. At that point, whether you believe it was threatening or not, whether you believe the officers reasonably could believe it was threatening, it was at that point where he raises his hand that they decided to handcuff him. And at that point, they could use force, reasonable force, to actually physically handcuff him. Excuse me. Could the assistant principal use force? Yes. Why? He's not a trained officer. So I think perhaps it would be analyzed under the 14th Amendment as opposed to the 4th Amendment, but he can also use reasonable force to maintain order in the school. And he only had a few trained police officers doing it, so why not pitch in as well, right? Well, I don't think at that point he was involved. At the point they went to handcuff him, it was the two officers. And the shorter officer grabs his right arm, and you can see Raymond resisting, and that's when the struggle ensued. But no one would question if they have probable cause to arrest and decide to handcuff him, that they can physically lift his arm to handcuff him. The fact that Raymond resisted and a struggle ensued is unfortunate, but it doesn't make the force that they use here unreasonable. And if you watch those videos, their actions throughout were reasonable, and they tried the best they could to get him to just go to the dean's office without incident. And it was Raymond's act of resistance that made this into something more than it probably should have been. Okay. Judge Rakoff, do you have any additional questions? Believe it or not, I do not. No questions? Okay. Ms. Carlin, you have about 30 seconds left, I think. Do you have anything else? Unless anyone has questions, we will rest on our breath. Okay. Mr. Larson, you have two minutes of rebuttal. Okay. I'll try to roll through this. There's no question that a knee-to-neck cardioid restraint is excessive under any condition. And that's what was employed by Assistant Principal Bourbon to Raymond's neck, and there's nothing in the record to dispute that. School officials are just as subject to the Fourth Amendment as police officers are, except they don't have any of the defenses that police officers have. Bourbon never answered the complaint, nor did the city. There were no arguments on their behalf in defendants' motion for summary judgment. Defendants admit in their opposition to this appeal that Raymond was admittedly squirming, and that AP Bourbon was trying to do anything that all AP Bourbon was trying to do was nothing more than hold Raymond while the SSA attempted to handcuff him. As soon as he was handcuffed, Bourbon lifted his knee, and the SSA lifted Raymond from the floor. AP Bourbon applied an illegal knee-to-neck restraint on Raymond while he was pinned down by a 300-pound SSA and another formidable SSA on each side being handcuffed, just like George Floyd. This is a kid. This is a kid. This is a teenager. He did not deserve that. Now, the question of whether they had probable cause in the first place is disputed every step of the way, and whether the video is naturally not susceptible to a misdemeanor. Mr. Larson, having dealt with this in another matter involving actually a lawyer who was arrested, there is this obstruction of governmental administration statute that's pretty broad, as I understand it, that might cover the incident here, the arrest here, where he doesn't, in response to a directive, he refuses to move from the stairs, and then obviously he refuses in the hallway. I would disagree. I'm sorry. I would disagree. Sorry. I'm sorry. Should I respond? Yeah. I would agree that this satisfied the elements of interference in governmental administration because you need to prove intent. We've already said Raymond was scared about what was going to happen to him. He didn't intend to obstruct anything. He didn't intend to do any of the seven subsections of the disorderly conduct, which is a violation, not a crime. The overwhelming majority of times... No, but I'm not focused on disorderly conduct. I'm focused on the obstruction of governmental administration, which, and as I understand it, but you might correct me if I'm wrong, that takes very little. You have a directive, and more or less you say no. So, in another case, there was a lawyer in front of the Occupy Wall Street protest in the financial district. Police officers tell that person to move on, and he refuses to move on, and he is arrested and charged with that misdemeanor. That was apparently enough. I'm having a hard time seeing why that's not also a basis here. There's a separate issue that you obviously heard about relating to the use of force thereafter, but I'm just having a problem understanding your resistance to the violation for obstructing governmental administration. Case law doesn't support that. The Eastern District's decision endowing the City of New York concluded that failing to obey a police order in and of itself does not constitute circumstances that give rise to probable cause. Failing to obey the police officer in Hilderbrant v. City of New York, another Eastern District case, holds that failing to obey a police officer in itself will not satisfy the requirement. Disobeying police officer is not the same as OGA. This is in part because OGA requires physical interference with the police action. It's also intentional crime. Intent was not proven here. If I could just say one last point about municipal claims of liability. Again, defendants didn't answer the complaint vis-à-vis the Department of Education, and they didn't make any argument against the Department of Education. Instead, they misled the court into believing that plaintiffs had voluntarily discontinued all of its claims against the city, against the Department of Education, when in fact the stipulation states quite clearly that only three claims against the city were dismissed. They also say that there's no allegations to support municipal liability. There's 50 paragraphs of highly detailed allegations that include the same allegations in a class action suit that was settled shortly before the incident that led to reforms that were announced by Carmen Farina on the morning that Raymond was assaulted for the same thing that happened to him. It prohibited it. Thank you. Thank you, Mr. Larson. Thank you very much. We will reserve decision, and I believe that that concludes today's oral argument calendar.